UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEORA LYNNE TERRILL,<br><br>　　　　　Plaintiff<br><br>　　v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br><br>　　　　　Defendant | CASE NO. 1:17-cv-00751-BAM<br><br>**ORDER REVERSING AGENCY'S DENIAL OF BENEFITS AND ORDERING REMAND** |

## I.　INTRODUCTION

Plaintiff Leora Lynne Terrill ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act.[1] The matter is before the Court on the parties' briefs, which were submitted without oral argument to Magistrate Judge Barbara A. McAuliffe. Having carefully considered the parties' briefs as well as the entire record in this case, the Commissioner's decision is REVERSED and the case REMANDED for further proceedings consistent with this Order.

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Docs. 7, 9.). On August 16, 2017, the action was reassigned to the Honorable Barbara A. McAuliffe for all purposes. *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73; *see also* L.R. 301, 305.

## II. BACKGROUND

Plaintiff applied for benefits on October 10, 2013, alleging disability beginning May 30, 2012. Her application was denied initially and on reconsideration. AR 17. On December 10, 2015, a hearing was held before Administrative Law Judge ("ALJ") Timothy Snelling. AR 36-59. Plaintiff appeared and testified along with her attorney. AR 36.

Using the Social Security Administration's five-step sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 30, 2012, the alleged onset date. AR 19. The ALJ identified: bipolar disorder; anxiety versus generalized anxiety disorder; depression versus depressive disorder; posttraumatic stress disorder; history of gastric bypass surgery; history of hypothyroidism; irritable bowel syndrome, migraine headaches; mood disorder; chronic pain syndrome; and multi-level spondylosis of the cervical spine as severe impairments. AR 19. Nonetheless, the ALJ determined that the severity of Plaintiff's impairments did not meet or medically equal the severity of any of the listed impairments. AR 20.

Based on his review of the entire record, the ALJ found that Plaintiff had the following residual functional capacity (RFC):

> to perform a wide range of medium work except she must avoid concentrated exposure to very loud noise. She is limited to no more than occasional face-to-face interaction with each the general public, coworkers, and supervisors. She is limited to no more that occasional ability to understand, remember, and carry out complex and detailed job instructions or make judgments on complex work-related job assignments. Moreover she cannot cope with the stress normally associated with semiskilled or skilled work.

AR 22.

Applying this RFC, the ALJ found Plaintiff could not complete her past relevant work as a registered nurse case manager, registered nurse, and home health aide. However, considering Plaintiff's age (46 years old), education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform. AR 27.

## III. LEGAL STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th

Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal citation and quotations omitted); *see also Hoopai*, 499 F.3d at 1074.

## IV. DISCUSSION

Plaintiff asserts three challenges to the ALJ's opinion. First, Plaintiff argues that the ALJ was required to obtain vocational expert ("VE") testimony at step five of the sequential evaluation process instead of relying on the medical vocational guidelines ("Grids"). Second, Plaintiff argues that the ALJ's RFC determination is based on insufficient evidence. Specifically, the ALJ failed to adopt the opinion of her treating psychiatrist when formulating her mental RFC and the ALJ made a lay interpretation of her MRI evidence when formulating her physical RFC. In her final challenge, Plaintiff argues that the ALJ failed to provide clear and convincing reasons for denying her subjective symptom testimony. (Docs. 18, 23). For the reasons that follow, the Court finds that the ALJ failed to carry his burden at step five of the sequential evaluation and such failure constitutes reversible error. The Court declines to reach Plaintiff's remaining arguments.

### A. The ALJ's Application of the Grids

In her first issue, Plaintiff contends the ALJ erred in relying on the Grids without the aid of a vocational expert ("VE"). According to Plaintiff, the ALJ was required to ask a VE to consider her ability to perform medium jobs given her limitations to "no more than occasional face-to-face interaction with each the general public, coworkers, and supervisors." (Doc. 18 at 15).

Defendant counters that the use of the Grids was appropriate because Plaintiff's non-exertional limitations did not significantly erode the occupational base which precludes the need for a VE. (Doc. 19 at 8).

#### i. Legal Standard

The Grids provide a uniform conclusion about disability for various combinations of age, education, previous work experience, and residual functional capacity. The Grids allow the Commissioner to streamline the administrative process and encourage uniform treatment of claims based on the number of jobs in the national economy for any given category of residual functioning

capacity. *See Heckler v. Campbell*, 461 U.S. 458, 460-62, 103 S. Ct. 1952, 76 L. Ed. 2d 66 (1983) (discussing creation and purpose of the Grids).

The Commissioner may apply the Grids in lieu of taking the testimony of a vocational expert only when the Grids accurately and completely describe the claimant's abilities and limitations. *See Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985). Thus, the Commissioner generally may not rely on the Grids if a claimant suffers from non-exertional limitations because the Grids are based on exertional strength factors only. See 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(e). "If a claimant has an impairment that limits his or her ability to work without directly affecting his or her strength, the claimant is said to have non-exertional . . . limitations that are not covered by the Grids." *Penny v. Sullivan*, 2 F.3d 953, 958 (9th Cir. 1993) (citing 20 C.F.R., Part 404, Subpart P, Appendix 2, § 200.00(d), (e)).

In cases where the Grids are not fully applicable, the ALJ may meet his burden under step five of the sequential analysis by propounding to a vocational expert hypothetical questions based on medical assumptions, supported by substantial evidence, that reflect all the plaintiff's limitations. *See Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995). Specifically, where the Grids are inapplicable because plaintiff has sufficient non-exertional limitations, the ALJ is required to obtain vocational expert testimony. *See Burkhart v. Bowen*, 856 F.2d 1335, 1341 (9th Cir. 1988).

### ii. Analysis

In formulating Plaintiff's RFC, the ALJ determined that Plaintiff is limited to occasional face-to-face interaction with the general public, coworkers, and supervisors. AR 21. Plaintiff is also "limited to no more than the occasional ability to understand, remember, and carry out complex and detailed job instructions or make judgments on complex work-related job assignments. Moreover, she cannot cope with the stress normally associated with semiskilled or skilled work." AR 21-22. At step five, the ALJ found despite Plaintiff's non-exertional limitations, her mental functioning did not "significantly diminish the occupational base from a wide range of medium work." AR 28.

Citing Social Security Ruling 85-15, the ALJ noted that

> the basic demands of competitive, remunerative, unskilled work include the abilities to carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting on a sustained basis. A substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base.

In applying SSR 85-15, the ALJ explained that Plaintiff's limits to "interacting with supervisors or coworkers" does not preclude her from interacting with supervisors or coworkers as "she is able to occasionally interact with others and she has no limitations in performing simple or unskilled work." AR 27. As a result, the ALJ found that reliance on the grids was appropriate which directed a finding of "not disabled" under grid rule 203.29. AR 28.

Here, the ALJ's reliance on the grids for a non-disability determination in light of Plaintiff's non-exertional limitations was improper. There is no dispute here that the ALJ found sufficient evidence to support Plaintiff's non-exertional limitations with respect to Plaintiff's ability to interact with coworkers, supervisors, and the public as the ALJ incorporated those limitations into Plaintiff's RFC. The question here is whether limitations in interactions with the public, coworkers, and supervisors significantly erodes the unskilled occupational base and thereby necessitating a VE.

In responding to this question, Defendant argues that the ALJ's sole reliance on the Grids is proper because the ALJ limited Plaintiff to unskilled work which generally involves interaction with objects rather than people. (Doc. 19 at 8). This argument is unpersuasive, however, because it does not address all of the non-exertional limitations found by the ALJ. While several courts have found that a limitation to "occasional contact with the general public" is congruent with the nature of unskilled work such that the limitation does not erode the occupational base, the effect of Plaintiff's other non-exertional limitations, involving contact with coworkers and supervisors, is a different case. *See Lester v. Astrue*, No. 09–01730, 2011 U.S. Dist. LEXIS 31874 at *29–29, 2011 WL 902344 (E.D. Cal. March 14, 2011) (limited exposure to the general public did not erode the occupational base of unskilled work); *Ramirez v. Astrue*, No. 09–01508, 2010 U.S. Dist. LEXIS 106082 at *32, 2010 WL 3734002 (E.D. Cal., Sept. 21, 2010) (ALJ properly utilized Grids at step 5 to determine claimant could perform unskilled work where claimant's non-exertional limitations included limited public contact).

A number of courts have held that where an ALJ specifically limits a claimant's ability to interact with coworkers and supervisors, such a limitation conflicts with the basic requirements of unskilled work and has the potential to significantly erode the occupational base. *See e.g. Dubord v. Comm'r of Soc. Sec.*, No. 2:16-cv-1402-CMK, 2018 U.S. Dist. LEXIS 58481, 2018 WL 1638866 (E.D. Cal. Apr. 5, 2018) (ALJ required to call a vocational expert to testify despite the ALJ's finding that a limitation of occasional face-to-face interaction with the general public and coworkers would not significantly erode the occupational base); *Henderson v. Colvin*, No. CV 13-2930 FFM, 2014 U.S. Dist. LEXIS 116982 (C.D. Cal. Aug. 21, 2014) (grids inapplicable where the ALJ limited claimant to less than frequent interaction with others) (*citing Little v. Commissioner of Soc. Sec.*, 780 F. Supp. 2d 1143, 1153-54 (D. Or. 2011) (emphasizing that unskilled work requires ability to respond appropriately to supervision and coworkers, even if it involves "dealing primarily with objects"); *Gonzales v. Astrue*, 1:09-CV-01306-GSA, 2010 WL 4392911 (E.D. Cal. Oct. 29, 2010) (grids inapplicable because Plaintiff's history of supervisory conflict and moderate impairments in dealing with work stress could limit Plaintiff's occupational base); *Stark v. Astrue*, No. 07–6465, 2009 U.S. Dist. LEXIS 72807 at *18–21, 2009 WL 2566723 (N.D. Cal. Aug.18, 2009) (SSR 85-15 did not support ALJ's assertion that restrictions in working with public, coworkers, and supervisors did not limit occupational base of unskilled light work, ALJ accordingly erred in relying solely on Grids to find plaintiff not disabled); *Shankles v. Astrue*, No. 09–1258, 2010 U.S. Dist. LEXIS 132145 at *43–44, 2010 WL 5169077 (E.D. Cal. Dec.14, 2010) (finding unskilled work requires ability to interact with coworkers and supervisors and lack of that ability could affect occupational base at all exertional levels so reliance on grids inappropriate); *Galinski v. Astrue*, 2011 U.S. Dist. LEXIS 151424, 2011 WL 7070323, *16 (W.D. Wash. 2011) (SSR 85-15 did not support ALJ's assertion that restrictions in working with public, coworkers, and supervisors did not limit occupational base of unskilled light work; ALJ accordingly erred in relying solely on Grids to find plaintiff not disabled); *Gurney v. Astrue*, 2009 U.S. Dist. LEXIS 122088, 2010 WL 323912, *3 (D. Me. 2010) (same).

As noted by the ALJ, SSR 85-15 provides that one of the requirements of unskilled work is the ability "to respond appropriately to supervision [and] coworkers...." AR 27, 20 CFR § 404.1521;

SR 85–15, 1985 SSR LEXIS 20 at *11. The ruling further states that "a substantial loss of ability to meet any of these basic work-related activities would severely limit the potential occupational base." 1985 SSR LEXIS 20 at *11,1985 WL 56857. In light of SSR 85-15 and case authority, the Court concludes that the Grids do not provide an adequate basis for the ALJ to conclude that Plaintiff is not disabled. Although the ALJ stated that the VE testimony was not required to reach a decision that Plaintiff could perform work, and that Plaintiff's limitations in mental functioning did not significantly diminish the occupational base, the Court cannot accept the ALJ's decision given the weight of authority finding that a limitation on a claimant's ability to interact with either supervisors or coworkers precludes the ALJ from relying on the Grids. As a result, the case will be remanded so that the ALJ can address these limitations and take the testimony of a vocational expert.

**B.     The Court Declines to Address Plaintiff's Remaining Arguments**

Having found that remand is warranted, the Court declines to address Plaintiff's remaining arguments. *See Hiler v. Astrue*, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); *see also Augustine ex rel. Ramirez v. Astrue*, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand.").

**C.     Remand is Required**

Finally, the Court has considered Plaintiff's request to award benefits rather than remand the case for additional proceedings, but finds remand more appropriate. The decision whether to remand for further proceedings or order an immediate award of benefits is within the Court's discretion. *See Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find plaintiff disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 593-96 (9th Cir. 2004).

In this case, there are outstanding issues that must be resolved before a final determination can be made. Specifically, the ALJ's reliance on the grids was improper and therefore the ALJ was required to consult a VE. On remand, the ALJ must take the testimony of a VE to determine whether

there are jobs in the national economy that Plaintiff is able to perform despite her mental limitations. Although the Court understands the importance of expediting disability claims; remanding this case for further administrative proceedings will serve a useful purpose in the resolution of this case. *Varney v. Sec'y of Health & Human Serv.*, 859 F.2d 1396, 1401 (9th Cir. 1988). The Court therefore concludes that remand for further administrative proceedings is appropriate.

## V. CONCLUSION

Based on the foregoing, the Court finds that the ALJ's disability determination warrants remand. Accordingly, the decision is **REVERSED** and the case **REMANDED** to the ALJ for further proceedings consistent with this decision. The Clerk of the Court is **DIRECTED** to enter judgment in favor of Plaintiff.

IT IS SO ORDERED.

| | | |
|---|---|---|
| Dated: | **September 18, 2018** | /s/ *Barbara A. McAuliffe* |
| | | UNITED STATES MAGISTRATE JUDGE |